OPINION
David Green is appealing the judgment of the Montgomery County Common Pleas Court, which found him guilty of carrying a concealed weapon and having a weapon while under a disability.
On July 19, 2000 at approximately 8:00 p.m., Dayton Police Officers Brad Meeker and Shannon Mason were dispatched to 1567 West Second Street to respond to a report of shots having been fired. An anonymous caller had informed the police that David Green, who was identified as wearing all red clothes and a red hat, was running down the street chasing and shooting at another man. The officers arrived at the corner of West Second Street and North Euclid Avenue one minute after receiving the dispatch. Mr. Green was standing at the entrance to an alley on Euclid wearing red shorts, a red shirt, and a red hat. When the officers began to approach Mr. Green in their cruiser, he crossed the street. Officer Meeker got out of the cruiser and ordered Mr. Green to the ground. Rather than stopping as requested, Mr. Green said "I didn't do it" and ran back across Euclid and toward the alley. While Mr. Green was running back across the street, Officer Meeker saw Mr. Green reach towards the front waistband of his shorts. Officer Meeker believed that Mr. Green may have been removing a gun. Officer Mason pursued Mr. Green in her cruiser as he ran down the alley, while Officer Meeker ran down Euclid to attempt to cut Mr. Green off at the far end of the alley.
Officer Mason caught Mr. Green at the far end of the alley, but he had no gun on him. Officer Meeker and two other officers searched the alley and found a Reuger .357 Magnum in a tree stump at the entrance to the alley. The gun was loaded and contained four spent shell casings.
Mr. Green was arrested and interviewed the following day. During the interview, Mr. Green initially claimed that he heard shots fired and stepped into the alley to see what was happening. After the detective told him that the gun had been found and that fingerprints had been lifted from it, Mr. Green admitted that the gun was his but denied having fired it. Mr. Green then claimed that he was on his way to sell the gun, which a tenant who was behind in his rent had given him a couple weeks prior. On August 14, 2000, Mr. Green was indicted on one count of carrying a concealed weapon that was loaded in violation of R.C. 2923.12(A) and one count of having a weapon while under a disability in violation of R.C. 2923.13(A)(2). In January of 2001, a jury trial was held on the charge of carrying a concealed weapon while the charge of having a weapon while under a disability was tried to the trial court. Both parties stipulated to the operability of the gun and, when outside of the presence of the jury, the parties stipulated to Mr. Green's prior conviction. The jury found Mr. Green guilty of carrying a concealed weapon, and the trial court found Mr. Green guilty of having a weapon while under a disability. On March 5, 2001, the trial court sentenced Mr. Green to concurrent sentences of eight months for each conviction. Mr. Green appealed the convictions.
Mr. Green raises one assignment of error:
 THE VERDICTS AGAINST MR. GREEN WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Mr. Green argues that no evidence was presented to the jury that he either "carried" or "concealed" the gun. We disagree.
A manifest weight of the evidence challenge contests the believability of the evidence presented. State v. Hufnagel (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The appropriate standard of review is as follows:
 The court, when reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Martin (1983), 20 Ohio App.3d 172, 175.
R.C. 2923.12(A), one of the sections for which Mr. Green was convicted, provides, "No person shall knowingly carry or have, concealed on his or her person or concealed ready at hand, any deadly weapon or dangerous ordnance."
First, Mr. Green argues that he cannot be convicted of carrying a concealed weapon because no one saw him actually carrying the gun. However, Mr. Green admitted to the detective that the gun was his, that a tenant had given it to him, and that he was taking it somewhere to sell it. It is difficult to imagine how Mr. Green was getting the gun from the tenant to a place to sell it if he was not carrying it. Also, the officers responded to the dispatch, which reported that a man matching Mr. Green's description was shooting at someone, one minute after receiving the dispatch and found Mr. Green. Furthermore, Mr. Green ran from the police officers when they approached, which is evidence of his guilt. See State v. Williams (1997), 79 Ohio St.3d 1, 11, certiorari denied (1998), 522 U.S. 1053. Also, Officer Meeker testified that he saw Mr. Green reaching into the waistband of his shorts as he was running into the alley, and a gun, which Mr. Green admitted belonged to him, was found near the entrance to the alley. The gun had four spent shell casings, which corresponded with the anonymous caller who stated that Mr. Green was shooting at someone in the street.
Additionally, Mr. Green would be guilty of the carrying a concealed weapon charge even if the jury had concluded that Mr. Green hid the gun in the alley before the officers arrived because it would still be concealed ready at hand. Alternatively, if Mr. Green threw it as he was running from the officers, he was literally carrying it. Either way, the evidence established that Mr. Green was "carrying" the gun.
Secondly, Mr. Green argues that there was no evidence that he "concealed" the gun. In arguing this point, Mr. Green attacks the credibility of Officer Meeker. Although in manifest weight challenges the credibility and weight given to the evidence are at issue, these decisions are primarily for the trier of fact. State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring), citing State v. DeHass (1967), 10 Ohio St.2d 230, 39 O.O.2d 366. The jury's function is "to resolve the facts of the case and determine the credibility of the witnesses before it." State v. Walker (1978), 55 Ohio St.2d 208, 213, 9 O.O.3d 152, citing State v. Clay (1972), 34 Ohio St.2d 250. When considering the credibility of witnesses, an appellate court should be "extremely restrained" because "a written record cannot convey witness demeanor and the impact [that] certain witnesses may have had on the jury." Hufnagel, supra.
Mr. Green argues that the evidence against him regarding concealment of the weapon stemmed from Officer Meeker's testimony, which lacked credibility. Officer Meeker testified that Mr. Green had appeared to be reaching into the waistband of his shorts for what Officer Meeker had believed to be a gun. Mr. Green argues that Officer Meeker did not see him reach into the waistband of his pants but instead falsified his testimony to that extent. However, after reviewing the testimony, we do not find Officer Meeker's testimony in that regard lacks credibility. Additionally, the gun, which Mr. Green admitted belonged to him, was found inside a hollow tree stump. A jury could have reasonably found that Mr. Green had his gun inside the waistband of his shorts and threw it in the tree stump in the alley to hide it. Also, the jury could have concluded that Mr. Green hid his gun in the alley before the police arrived. Thus, the simple fact that Mr. Green's gun was hidden inside a tree stump in the alley, in which Mr. Green was running from the police was evidence that the gun was concealed ready at hand in the alley. The weight of the evidence supports the jury's conclusion that Mr. Green "concealed" the gun.
As to the second count, Mr. Green was convicted of knowingly acquiring, having, carrying, or using a firearm after previously having been convicted of a felony offense of violence. R.C. 2923.13(A)(2). Both parties stipulated to Mr. Green's prior conviction. Furthermore, Mr. Green admitted in his statement to the detective that the gun was his, that he had received it from a tenant who was late in his rent, and that he was on his way to sell it when the police found him. Logically, Mr. Green must have carried the gun in order to have transported the gun from the tenant to the tree stump in the alley. Additionally, under R.C.2923.13(A)(2), Mr. Green merely acquiring the gun from the tenant was a violation of the statute. Thus, the weight of the evidence supports the trial court's determination that Mr. Green violated R.C. 2923.13(A)(2).
Therefore, we cannot say that the jury or the trial court clearly lost its way and committed a manifest miscarriage of justice in finding Mr. Green guilty of violating R.C. 2923.12(A) and R.C. 2923.13(A)(2) based on the evidence. The judgment of the trial court is affirmed.
BROGAN, J. and FAIN, J., concur.